**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GIOVANNA MARCELLO, DAWN-MARIE | : | CIVIL CASE NO. |
| WHITE, CAROLYN SMITH-KENION, | : | |
| DAWNA FAHEY, LISA J. GRUNIGEN, | : | |
| PAUL CHASE, | : | |
|     Plaintiffs, | : | |
| | : | |
| VS. | : | |
| | : | |
| MELODY A. CURREY, COMMISSIONER OF | : | |
| THE DEPARTMENT OF ADMINISTRATIVE | : | |
| SERVICES (DAS), in her official, and individual | : | |
| capacities, RODERICK L. BREMBY, | : | |
| COMMISSIONER OF THE CONNECTICUT | : | |
| DEPARTMENT OF SOCIAL SERVICES (DSS), | : | |
|  in his official capacity, | : | |
|     Defendants. | : | JUNE 12, 2018 |

**COMPLAINT**

## I.    PRELIMINARY STATEMENT

1.    This is an action brought for violations of plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution suffered by the plaintiffs when the defendants deprived them of the same benefits that they, as decision makers, arbitrarily bestowed on other similarly situated employees.

## II.    JURISDICTION

2.    This action arises under the Fourteenth Amendment to the United States Constitution, made actionable against the defendants pursuant to the provisions of Title 42 U.S.C. §1983.

3.    Jurisdiction is invoked pursuant to Title 28 U.S.C. §1331 and Title 28 U.S.C. §1343.

4.    Declaratory, injunctive and equitable relief is sought pursuant to Title 28 U.S.C. §2201 and Title 28 U.S.C. §2202.

5.    Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §1988 and Rule 54 of the Federal Rules of Civil Procedure.

## III.    VENUE

6.    This action properly lies in the United States District Court for the District of Connecticut pursuant to Title 28 U.S.C. §1391(b), because the claims of the plaintiffs arose in this judicial district, and the defendants resided within the District of Connecticut.

## IV.    PARTIES

7.    The plaintiff, Giovanna Marcello, is a citizen of the United States and resides in West Haven, Connecticut.

8.    The plaintiff, Carolyn Smith-Kenion, is a citizen of the United States and resides in New Haven, Connecticut.

9.  The plaintiff, Dawna Fahey, is a citizen of the United States and resides in Meriden, Connecticut.

10. The plaintiff, Lisa J. Grunigen, is a citizen of the United States and resides in Ashford, Connecticut.

11. The plaintiff, Paul Chase, is a citizen of the United States and resides in Vernon, Connecticut.

12. The plaintiff, Dawn-Marie White, is a citizen of the United States and resides in New Haven, Connecticut.

13. The defendant, Melody A. Currey, who is named in her individual and official capacity, has been at all times relevant to this action the Commissioner for the Department of Administrative Services, an administrative agency of the State of Connecticut.

14. The defendant, Roderick L. Bremby, who is named in his official capacity, has been at all times relevant to this action the Commissioner of the Department of Social Services, an administrative agency of the State of Connecticut.

15. The defendant, Melody A. Currey, and the defendant, Roderick L. Bremby, have at all times relevant to this complaint acted under color of law.

16. The defendant, Melody A. Currey, and the defendant, Roderick L. Bremby, are persons as that term is recognized under the provisions of Title 42 U.S.C. § 1983.

17. The plaintiffs seek equitable relief against the defendant, Melody A. Currey, and the defendant, Roderick L. Bremby, in their official capacities to enjoin their

violation of the plaintiffs' Fourteenth Amendment rights to equal protection of the laws and prospective injunctive relief requiring the defendant, Melody A. Currey, and the defendant, Roderick L. Bremby, to adjust the employment classifications of the plaintiffs to reflect pay grades in keeping with the provisions of General Letter No. 29 – Temporary Service in a Higher Classification (Revised). *Exhibit 1.*

18. The plaintiffs seek monetary damages against the defendant, Melody A. Curry, in her individual capacity, for her intentional violation of the plaintiffs' rights to equal protection of the laws.

## V.    <u>FACTS</u>

19.  The plaintiffs are employees of the State of Connecticut Department of Social Services ("DSS").

20. In 2013, DSS embarked on a project that entailed the implementation of a new computer system replacing the DSS' eligibility management system.

21. With the start of the project to implement the new eligibility management system, DSS requested volunteers from all categories of its employees to assist in the implementation of the project at DSS' central office in Hartford, Connecticut.

22. The relocation of the volunteers to the Hartford central office of DSS resulted in various supervisory positions becoming vacant at DSS' district level offices.

23. To fill these vacancies, DSS offered to many of its employees, including the plaintiffs, promotions to higher-class positions in the status of Temporary Service in Higher Class.

24. Prior to her appointment to temporary service in the higher-class position of Eligibility Services Supervisor on December 20, 2013, the plaintiff, Giovanna Marcello, worked for DSS in the permanent position of Eligibility Services Specialist.

25. Prior to her appointment to temporary service in the higher-class position of Eligibility Services Supervisor on December 20, 2013, the plaintiff, Dawn-Marie White, worked for DSS in the permanent position of Eligibility Services Specialist.

26. Prior to her appointment to a temporary higher-class position of Public Assistant Consultant on December 2, 2013, the plaintiff, Carolyn Smith-Kenion, worked for DSS in the permanent position of Eligibility Services Supervisor.

27. Prior to her appointment to a temporary higher-class position of Public Assistant Consultant on December 13, 2013, the plaintiff, Dawna Fahey, worked for DSS in the permanent position of Quality Control Reviewer.

28. Prior to her appointment to a temporary higher-class position of Public Assistant Consultant on November 29, 2013, the plaintiff, Lisa J. Grunigen, worked for DSS in the permanent position of Eligibility Services Supervisor.

29. Prior to his appointment to a temporary higher-class position of Public Assistant Consultant on November 29, 2013, the plaintiff, Paul Chase, worked for DSS in the permanent position of Eligibility Services Specialist.

30. The Temporary Service in Higher Class status envisioned that the temporary promotions would end on December 31, 2015, when the eligibility management

5

system was finalized, and once the assignments had concluded, the employees would return to his or her permanent assignments.

31.  While serving on temporary assignment in the higher-class positions, the plaintiffs were paid the compensation of the higher-level positions, and received the annual step increases for the higher-level position in 2014, 2015, and 2016.

32.  While working in the higher-class positions on temporary service status, each of the plaintiffs, at various times, received permanent promotions to the positions in which they were temporarily assigned.

33.  The plaintiff, Giovanna Marcello, was promoted to the position of Eligibility Services Supervisor on January 20, 2017.

34.  The plaintiff, Dawn-Marie White, was promoted to the position of Eligibility Services Supervisor on January 20, 2017.

35.  The plaintiff, Carolyn Smith-Kenion, was promoted to the position of Public Assistant Consultant on January 8, 2016.

36.  The plaintiff, Dawna Fahey, was promoted to the position of Public Assistant Consultant on January 8, 2016.

37.  The plaintiff, Lisa J. Grunigen, was promoted to the position of Public Assistant Consultant on May 5, 2015.

38.  The plaintiff, Paul Chase, was promoted to the position of Public Assistant Consultant on February 17, 2017.

6

39.   When the plaintiffs were promoted, DSS reverted their compensation to the pay grade they were receiving when first appointed to the temporary promotions in the higher-class positions, wiping out the annual pay step increments they had been paid in 2014, 2015, and 2016, and started their permanent promotion at the initial step pay grade to which they had been temporarily promoted in 2013.

40.   Employees of DSS who were similarly situated to the plaintiffs, in that they had received temporary promotions to higher-class positions because of the vacancies caused by the volunteers working on the project to implement the new eligibility management system were treated more favorably than the plaintiffs when they received their permanent promotions to the higher-class positions solely because their promotions occurred after March 13, 2017.

41.   Employees of DSS, who had been promoted to higher class positions on a temporary basis as a result of the vacancies caused by the volunteers leaving their position to work on the project to implement the new eligibility management system and who were  permanently promoted to the higher-class positions after March 13, 2017, retained, unlike the plaintiffs, the annual step increases that they had received while serving in the temporary promotion positions resulting in their compensation being based on the last step achieved at the end of their temporary service in a higher class, as opposed to the pay step they had reached at the start of their temporary service in a higher class.

7

42. The defendant, Melody A. Curry, the decision-maker for DAS, was responsible for the discriminatory treatment of the plaintiffs when she issued "General Letter No. 29 – Temporary Service in a Higher Classification (Revised)," *Exhibit 1,* which resulted in employees of DSS, who had received permanent promotions after March 13, 2017, to the positions they were filling on a temporary basis as a result of the vacancies caused by the volunteers working on the implementation of the new eligibility management system being treated more favorably than the plaintiffs.

43. The defendants, Melody A. Currey and Roderick L. Bremby were the administrators and decision-makers responsible for determining the formula for compensating the employees who had received permanent promotions to the positions they were filling on a temporary basis as a result of the vacancies caused by the volunteers working on the implementation of the new eligibility management system.

44. The defendants, Melody A. Currey and Roderick L. Bremby, were the administrators responsible for adopting the policy that treated the DSS' employees, who had received permanent promotions to the positions they were filling on a temporary basis, differently based on the date they received their permanent promotions.

45. The defendants, Melody A. Currey and Roderick L. Bremby, were the administrators responsible for adopting a policy that treated the plaintiffs less

favorably than the similarly situated DSS' employees who were promoted after March 13, 2017.

46. The defendant, Melody A. Currey, as the Commissioner of the Department of Administrative Services, had the final say in the implementation of General Letter No. 29 – Temporary Service in a Higher Classification (Revised)," *Exhibit 1,* which violated the plaintiffs' constitutional rights to equal protection of the laws.

47. General Letter No. 29 – Temporary Service in a Higher Classification (Revised) provides, in relevant part, "[i]f the employee is promoted via permanent appointment to the higher classification (immediately) following completion of TSHC (temporary service in a higher classification), retain compensation rate s/he received while serving TSHC."

48. Instead of applying the promotion formula contained in General Letter No. 29 to all the employees who had received permanent promotions to the positions they were filling on a temporary basis as a result of the vacancies caused by the volunteers working on the implementation of the new eligibility management system, the defendant, Melody A. Curry, only applied it to employees who had received permanent promotions after March 13, 2017.

49. Because the plaintiffs received permanent promotions to the temporary service in a higher classification positions in which they were assigned in connection with the project to implement the new eligibility management system prior to March 13, 2017, the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby,

required that the plaintiffs revert to their permanent status and compensation which they held prior to their temporary appointments at a substantial loss in compensation.

50. The plaintiffs' status, except for the date of their permanent promotions occurring prior to March 13, 2017, was identical to those DSS' employees, who had been permanently promoted after March 13, 2017.

51. The selection of the March 13, 2017, date by the defendant, Melody A. Curry, was arbitrary, and not supported by a rational reason.

52. The selection of the March 13, 2017, date by the defendant, Melody A. Curry, was not required by any statutory or regulatory provision of the State of Connecticut.

53. The defendant, Melody A. Curry, acted arbitrarily in selecting the March 13, 2017, date, which, on its face, discriminated against the plaintiffs.

54. Since the plaintiffs and the employees promoted after March 13, 2017, worked in the same or similar capacities in filling the vacancies caused by volunteers leaving their positions to work on the project to implement the new DSS eligibility management system, the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, were required by the Fourteenth Amendment to the United States Constitution to treat the employees in the same manner.

55. As a direct and proximate result of the unconstitutional actions of the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, the plaintiffs have suffered loss of salary, ranging from $8,000.00 to $12,000.00 annually.

56.    As a direct and proximate result of the actions of the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, the plaintiffs have suffered emotional distress.

57.    The defendant, Melody A. Curry, was the final decision maker for DAS, and the State of Connecticut when she arbitrarily selected the date of March 13, 2017, which resulted in the deprivation of the plaintiffs' constitutional rights.

58.    The defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, are public officials and acted at all relevant times under color of law.

59.    The defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, knew or should have known that they could not treat the plaintiffs differently solely on the basis of the arbitrary date of their promotions.

VI.    **FIRST CAUSE OF ACTION (Violation of the Plaintiffs' Right to Equal Protection of the Laws In Violation of the Fourteenth Amendment to the United States Constitution)**

60-118.    The plaintiffs incorporate as if re-alleged paragraphs 1 through 59.

119.    The violation of the plaintiffs' right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution is made actionable pursuant to Title 42 U.S.C. §1983.

120.    As a result of the actions of the defendant, Melody A. Curry, in depriving the plaintiffs of their right to equal protection of the laws, the plaintiffs have suffered emotional distress.

11

121.   As a further result of the actions of the defendant, Melody A. Currey, in depriving the plaintiffs of their right to equal protection of the laws, the plaintiffs have suffered a loss of income.

122.   As a further result of the actions of the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, in depriving the plaintiffs of their right to equal protection of the laws, the plaintiffs have been denied their proper salary classification, which will cause them irreparable harm in loss future pay and pension entitlements for which they have no legal remedy.

123.   The plaintiffs' right to equal protection of the laws has been a well-established legal right under the provisions of the Fourteenth Amendment to the United States Constitution at the time the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby, treated the plaintiffs differently from the DSS employees promoted after March 13, 2017, even though they worked in the same or similar capacities in filling the vacancies caused by volunteers leaving their positions to work on the project to implement the new DSS eligibility management system.

VI.   **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFFS PRAYS THAT THIS COURT:

As to the First Cause of Action

a.   declare the conduct engaged by the defendants to be in violation of the plaintiffs' rights;

b.   enjoin the defendants from engaging in such conduct;

12

c.  require the defendant, Melody A. Curry, and the defendant, Roderick L. Bremby to place the plaintiffs in the classifications in which they currently would have been if accorded the treatment called for under General Letter No. 29 – Temporary Service in a Higher Classification (Revised);

d.  order the defendant, Melody A. Curry, to pay the plaintiffs the equitable remedy of back pay until placed in the proper salary classifications;

e.  order the defendant, Melody A. Curry, to pay the plaintiffs prejudgment interest;

f.  order the defendant, Melody A. Curry, to pay award the plaintiffs compensatory damages;

g.  order the defendant, Melody A. Curry, to pay the plaintiffs their costs and attorney fees; and

h.  grant such other and further relief as the Court may deem just and proper.

THE PLAINTIFFS


BY: /s/ Thomas W. Bucci
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Email: thomasbucci@earthlink.net

13

PLAINTIFF'S
EXHIBIT
1
ALL-STATE LEGAL



## DEPARTMENT OF ADMINISTRATIVE SERVICES

450 Columbus Boulevard, Suite 1501, Hartford, CT 06103

TO:         Agency Heads and Agency HR Directors

DATE:       March 13, 2017

RE:         General Letter No. 29 – Temporary Service in a Higher Classification (Revised)

### PURPOSE

The purpose of this General Letter is to establish uniform procedures for temporary service in a higher classification (TSHC) appointments and supersedes the previous General Letter, dated June 30, 2006. TSHC occurs when an appointing authority temporarily appoints an employee to a position in a higher classification and the employee assumes the essential functions of the higher classification.

### POLICY

As part of appointing authorities' responsibility to deliver efficient, safe, and timely public services, they use their responsible judgement to appropriately manage and direct their agencies. Incorporated within this duty and obligation, appointing authorities may, for legitimate business purposes, make TSHC appointments under Sec. 5-209 of the Connecticut General Statutes, Management Personnel Policy 81-1 (MPP), and applicable collective bargaining agreements (CBA).

### SCOPE

This General Letter applies to all TSHC appointments within the executive branch under the jurisdiction of the Department of Administrative Services, Statewide Human Resources Management Division except for positions assigned to labor unit '01' or to the SE pay plan. Appointments to these appointed positions are not typically made on a temporary basis. However, there are situations when TSHC appointments to other appointed positions are appropriate, such as Warden or Superintendent, as those types of positions may need to be filled temporarily before a permanent appointment is made.

### REQUIREMENTS

A TSHC appointment is permissible when it is either inappropriate or not possible to delegate the essential duties to other staff without the need for TSHC due to either of the following:

- The incumbent of a position is not available for a period of time greater than thirty (30) days and the appointing authority determines that the need for the service is immediate, essential, and in the best interest of the public; or
- A vacant position that cannot be immediately filled on a permanent basis and the appointing authority certifies that the immediate rendition of service is essential and in the best interest of the public

TSHC appointments are restricted to bargaining unit employees serving in bargaining unit positions and non-bargaining unit employees serving in non-bargaining unit positions.

TSHC appointments are not to be used to circumvent the filling of approved vacancies and the use of reemployment, SEBAC and other mandatory lists.

Given that employees must qualify for the higher classification at the time of TSHC appointment, time served in a TSHC appointment is not credited toward meeting the minimum qualifications for the higher classification of the TSHC appointment. However, this experience can be credited toward meeting the minimum requirements for other class specifications.

## RESPONSIBILITIES

Agencies shall:
- Be judicious when making TSHC appointments pursuant to the above policy.
- Ensure TSHC appointments have a legitimate business purpose and are made in a fair, reasonable, and non-discriminatory manner.
- Inform employees of the requirements and benefits of TSHC in accordance with this policy and the employee's CBA or MPP.
- Appropriately manage employee work performance and attendance while serving TSHC. (Note: TSHC is at the direction of agencies. Therefore, approved and/or protected leaves of absence that occur during a TSHC do not break the continuity of the TSHC.)
- Ensure correct compensation while an employee serves in the TSHC appointment and immediately following the completion of the TSHC appointment (refer to "Compensation" section below).
- Retain and, when requested, provide approvals and other relevant documentation during the DAS SHRM post-audit.

The Department of Administrative Services, Statewide Human Resources Management Division shall:
- Review and render a decision on all requests for TSHC on the basis of ensuring the:
  - Appropriate use of the proposed higher classification; and
  - Proposed employee meets the minimum qualifications of the higher classification, based on the experience and training requirements listed on the class specification.
- Conduct post audits of assigned TSHC.

## PROCEDURES FOR MAKING TSHC APPOINTMENTS

If the appointing authority determines there is a need to make a TSHC appointment, the agency HR Professional enters a Position Data transaction via CORE-CT for approval, when a position action is appropriate, and e-mails the following required documentation to the assigned DAS HR Consultant responsible for the agency's Position Data request:
- Summary of the request, to include:
  - Requesting agency;
  - Reason for the TSHC;
  - Employee name;
  - Employee ID;
  - Permanent class title;
  - Class reassignment title;
  - TSHC position number;
  - TSHC start and end dates;

- o Name of employee being replaced, if applicable; and
- o Appointing letter to employee or other documents, if applicable.
- A current and completed application by the employee (i.e., CT-HR-12, as amended or replaced); and
- The current and proposed organizational charts.

It is critical that TSHC requests be made *prior to the commencement of the TSHC appointments* to ensure proper authority exists to compensate employees working higher level duties. There is no authority to make TSHC appointments and compensate employees prior to such approval. (Emphasis added)

The assigned DAS HR Consultant reviews the submitted information and renders a decision on:
- The appropriate use of the proposed higher classification; and
- If the proposed employee meets the minimum qualifications of the higher classification, based on the experience and training requirements listed on the class specification.

If the assigned DAS HR Consultant approves the use of the higher classification and deems that the proposed employee meets the minimum qualification of the higher classification, the agency HR Professional shall:
- Make TSHC appointments for the minimum duration required, not to exceed six months.
  - o If the agency believes it is necessary to extend a TSHC, the agency HR professional shall e-mail the assigned DAS HR Consultant to request and justify the need for an extension of the TSHC appointment beyond the initial six months. The requested extension shall not to exceed an additional six months. The assigned DAS HR Consultant must provide written approval of such a request for the employee to continue the extended TSHC appointment.
- When a new position is necessary to appoint an employee on a TSHC basis, establish and maintain a temporary position ensuring all DAS SHRM and OPM approvals have been received and verify that all mandatory lists have been cleared prior to compensating an employee for TSHC.
  - o A temporary position is required when the incumbent of the (higher) position is to be paid during the extended absence or when a vacant position cannot be immediately filled.
- Enter the TSHC in the employee's Job Data record in accordance with the CORE-CT Job Aid.
- Return an employee to the last held classification and base rate of compensation as if the employee had never left at the completion of the assigned TSHC.
  - o If the employee is promoted via permanent appointment to the higher classification (immediately) following completion of TSHC, retain the compensation rate s/he received while serving TSHC.

## COMPENSATION WHILE SERVING IN A TSHC APPOINTMENT

"Correct compensation" of an employee on a TSHC means the following:
- Paying the employee on the 31st consecutive calendar day or working day as determined by the applicable CBA or MPP, retroactive to the date of assumption of such higher duties and responsibilities.
- Assigning the employee appropriate hours of work that coincide with the requirements of the higher classification. When the hours differ from the last held permanent position, the employee accrues vacation leave in accordance with the last held permanent position.

- Providing the employee benefits and terms and conditions of employment based upon the employee's last held permanent position. This includes union dues, longevity payments and vacation payout (should the employee separate from state service while serving TSHC).
- Calculating the employee's base rate of compensation as if a promotion occurred and providing the following salary adjustments:
  - TSHC position is in the same bargaining unit as the last held permanent position: When a salary adjustment occurs, adjust the compensation accordingly in the TSHC position per the relevant CBA language. (Upon completion of TSHC, apply all salary adjustments to the last held position as though the employee never left that position.)
  - TSHC position is in a different bargaining unit than the last held permanent position: When a salary adjustment occurs in the last held position, virtually apply the adjustment (to the employee's pay in the last held position) and recalculate the promotion; adjust the TSHC pay, when appropriate. When a salary adjustment occurs in the TSHC position, apply the adjustment only to the TSHC pay.
- If the employee is promoted via permanent appointment to the higher classification (immediately) following completion of TSHC, retain the compensation rate s/he received while serving TSHC.

## POST AUDIT

All transactions under this General Letter are subject to post-audit by DAS SHRM.

## OTHER

Appointing authorities are responsible for the following regarding TSHC appointments:

- Responding to any administrative and/or legal challenges to TSHC appointments;
- Meeting all document retention requirements;
- Responding to all requests for information under the Freedom of Information Act (FOIA); and
- Maintaining the security and confidentiality of all TSHC appointment materials.

Please contact the assigned DAS HR Consultant for any questions regarding this General Letter.

Melody A. Currey
Commissioner
Department of Administrative Services

17-02