# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

GIOVANNA MARCELLO *et al.*,
    *Plaintiffs*,

v.

MELODY A. CURREY *et al.*,
    *Defendants*.

No. 3:18-cv-00978 (JAM)

## ORDER GRANTING MOTION TO DISMISS

The Constitution protects the right of the people to equal protection of the laws. This case involves a challenge by Connecticut state employees to a state personnel policy that gave more generous salary benefits to state employees who would be promoted to supervisor positions in the future than to state employees who had already been promoted to the same type of supervisor positions. Because I conclude that there are rational reasons for the State to award more generous salary benefits prospectively only, I conclude that the State's policy does not violate the Equal Protection Clause of the Constitution. Accordingly, I will grant defendants' motion to dismiss this case.

### BACKGROUND

I assume the following facts to be true as alleged in the complaint. Doc. #1. The plaintiffs are six employees of the Connecticut Department of Social Services (DSS). In 2013, there arose a need for DSS to fill numerous vacant supervisory positions at its district offices. To fill these vacancies, DSS offered to plaintiffs and other current DSS employees an opportunity for a temporary promotion to these supervisory positions. DSS did so in accordance with a state employment policy known as the Temporary Service in a Higher Classification ("TSHC") program.

1

All six of the plaintiffs accepted temporary promotions on various dates in November and December 2013. They continued in these positions until each of them were offered and accepted a permanent appointment to these supervisor positions on various dates from May 2015 to February 2017.

While the plaintiffs were serving as temporary supervisors, they received compensation for the higher-lever supervisor pay, and each year they received annual step increases for their higher-level positions. But then when they ended up accepting permanent appointments to their supervisor positions, DSS reverted their compensation to the pay grade that they had received when they were first temporarily promoted to the supervisor positions. This wiped out the annual pay step increments that plaintiffs had received while working as temporary supervisors and resulted in plaintiffs starting their permanent supervisor positions at the same initial step pay grade that was effective when they had been temporarily promoted in 2013.

The State eventually changed this salary policy. On March 13, 2017, after the plaintiffs had already been appointed to their permanent positions, the head of Connecticut's Department of Administrative Services (DAS) issued an administrative letter that changed the terms of the TSHC program. Doc. #1 at 14-17. Under the terms of the new policy for the TSHC program, state employees who were henceforth promoted from temporary supervisor positions to permanent supervisor positions would now receive the benefit of the compensation rate that they had received and accumulated while serving as temporary supervisors.

This new policy did not apply retroactively. That is, instead of applying this new salary policy to TSHC participants like plaintiffs who had been promoted to permanent positions before March 13, 2017, the new policy applied only to TSHC employees who received their permanent positions after the date of the new policy's issuance on March 13, 2017. According to plaintiffs,

as a result of not receiving the benefits of the State's new policy, they each suffer a loss of between $8,000 to $12,000 in annual salary.

Plaintiffs have filed this federal lawsuit against the commissioners of the DSS and DAS claiming a violation of their right to equal protection of the laws under the Constitution. Because they were promoted through the TSHC program to permanent supervisor positions before March 13, 2017, they were all subject to what I will refer to as the "Old Policy"—a *reversion* of their salaries upon their appointment to a permanent supervisor position to the same initial step pay grade that had applied to them in 2013 when they were temporarily promoted. Plaintiffs claim that they are similarly situated to other employees who also participated in the TSHC program but who happened to be promoted to permanent supervisor positions after March 13, 2017. These other employees were subject to the benefit of what I will call the "New Policy"—a *retention* of their salary step increases that they had accumulated while working as temporary supervisors.

Plaintiffs complain that the failure to apply the New Policy retroactively to them is arbitrary and not supported by any rational reason in violation of the Equal Protection Clause to the Constitution. Defendants have moved to dismiss the complaint.

## DISCUSSION

The Fourteenth Amendment provides in relevant part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As the Supreme Court has recognized, "most laws differentiate in some fashion between classes of persons," and "[t]he Equal Protection Clause does not forbid classifications," but "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

3

Equal protection cases generally fall into one of two categories. If the governmental distinction targets a suspect class (such as a class of persons based on race, gender, or religion) or targets the exercise of a fundamental right (such as the right to vote), then the governmental classification will be subject to heightened or strict scrutiny. All other governmental classifications need only be supported by a rational basis. *See ibid.*; *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

Because there is no claim in this case that the challenged salary policy burdens a suspect class or a fundamental right, my task is a limited one. I must first evaluate whether the State has subjected plaintiffs to treatment that is different from others who are similarly situated and, if so, determine whether there is a rational basis for the State to do so. *See Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018).

### *Similarly situated*

According to defendants, the plaintiffs who are subject to the Old Policy are not similarly situated to state employees who benefit from the New Policy. As defendants frame it, "we are not dealing with a rule that differentiates between similarly situated groups," but "[i]nstead, we have two different rules, applying, at different times, to all state employees," and "[t]o be similarly situated, the promoted employees would have to be compared to other employees subjected to the *same* [state] policy, not a later one." Doc. #25 at 3, 4 (emphasis in original).

This argument begs the very question that plaintiffs have brought this lawsuit to resolve. Their complaint is that as employees subject to the Old Policy they are treated differently without rational reason from employees who benefit under the New Policy. To this complaint it is no answer to say that there are "two different rules" when in fact there is just *one* distinction: that between Old Policy employees (those THSC employees whose temporary positions became

4

permanent before March 13, 2017) and between New Policy employees (those THSC employees whose positions became permanent after March 13, 2017).

Nor is there any merit to the argument that, because of the very distinction created by the State between Old Policy employees and New Policy employees, this must mean that Old Policy employees are not "similarly situated" to New Policy employees. This framing of the "similarly situated" requirement wrongly makes the "similarly situated" inquiry turn solely on the characteristics of the challenged governmental classification ("Old Policy" versus "New Policy"), rather than on the characteristics and similarities of those who are subject to the challenged classification (state employees who participated in the TSHC program).

Suppose, for example, that Congress says people with red hair must pay taxes but people with blonde hair need not. It is no answer to an Equal Protection challenge to say that redheads are subject to a different "policy" (pay taxes) than blondes (don't pay taxes). No Equal Protection Clause challenge would ever succeed under this circularly manipulable understanding of the "similarly situated" requirement, one that merely recites the government's own regulatory distinction to negate any argument that the persons subject to regulation are similarly situated.

Worse still for defendants' argument, the Equal Protection Clause's similarly situated requirement applies even when a law discriminates on the basis of a suspect class or exercise of a fundamental right. But if defendants were correct that the very distinction drawn by the law to divide people into classes is grounds to conclude that these classes are necessarily not "similarly situated," then the Equal Protection Clause would be meaninglessly unenforceable even against the most invidious and reprehensibly discriminatory laws. Instead, the proper analysis for whether two classes of persons are "similarly situated" is whether they are similar in relevant

5

respects that are at least in part independent from or external to the challenged classification that the law itself draws.[1]

Here, there is no doubt that employees under the Old Policy are similarly situated in relevant respects to employees under the New Policy. They all have state employment jobs. They all took part in the THSC program. They all gained temporary and then later permanent promotions. All that distinguishes them is the happenstance of the date when their temporary promotions matured to become permanent. Accordingly, viewing the alleged facts as I must on a motion to dismiss in the light most favorable to plaintiff, I conclude that plaintiffs who are subject to the Old Policy are similarly situated to those who benefit from the New Policy.[2]

*Rational basis*

This brings me next to whether there is a rational basis for the State to allow employees whose temporary promotion became permanent after March 13, 2017, to retain their interim salary benefits, while denying these same benefits for employees whose temporary promotions became permanent before March 13, 2017. At the outset, it is important to underscore the highly

---

[1] It is true that whether classes are "similarly situated" may sometimes turn not only on some characteristic inherent to class members but in part on the nature of a *pre-existing* governmental classification. For example, in the immigration context, the government broadly distinguishes between lawful permanent residents (LPR's) and non-LPR's, and the Second Circuit has concluded that, because of this pre-existing classification, these two classes of persons are not similarly situated for purposes of a particular provision of immigration law (among many governing the rights of LPR's and non-LPR's) that allows for discretionary relief from removal for non-LPR's but not for LPR's who commit an aggravated felony. *See Jankowski-Burczyk v. I.N.S.*, 291 F.3d 172, 176 (2d Cir. 2002). Here, by contrast, there is no pre-existing governmental classification at issue. It is solely the challenged salary disparity that serves as the basis for defendants' argument that the employee classes are somehow not "similarly situated" to one another.

[2] Defendants misplace their reliance on *Komondy v. Gioco*, 253 F. Supp. 3d 430, 451-52 (D. Conn. 2017), for the proposition that "grandfathered property owners were not similarly situated to property owners subject to new regulation." Doc. #25 at 4. The district court in *Komondy* did not articulate any general theory that, whenever the government allows for a "grandfather" preference, newcomers are not "similarly situated" as a class to old-timers who receive the "grandfather" preference. To the contrary, the court in *Komondy* went on (correctly) to analyze whether there was a rational basis for the alleged unequal zoning treatment. *Id.* at 453-56; *see also Kampfer v. Cuomo*, 643 F. App'x 43, 44 (2d Cir. 2016) (discussing use of a grandfather clause not as a basis for denying that classes are similarly situated but to determine whether a rational basis supports a grandfather clause and noting that "[g]randfather clauses are a long-accepted legislative tool for mitigating the effect of new regulations on persons who have relied on existing law").

deferential nature of rational basis review under the Equal Protection Clause. Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993). Indeed, as the Second Circuit has observed, "[m]uch of what states do is to favor certain groups over others on economic grounds," and "[w]hether the results are wise or terrible is not for us to say, as favoritism of this sort is certainly rational in the constitutional sense." *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 287 (2d Cir. 2015).

Moreover, when a court tries to determine if there is a rational basis to support a governmental classification, the Constitution "does not demand . . . that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger*, 505 U.S. at 15. Instead, due deference requires a court to decide only if there is "a purpose [that] may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Ibid.*

Nor is a court "confined to the particular rational or irrational purposes that may have been raised in the pleadings" by the parties; instead, "the court may hypothesize a legitimate, rational governmental purpose" to support the challenged distinction. *See Progressive Credit Union*, 889 F.3d at 50. In short, a court must uphold a classification against an Equal Protection challenge "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 92 (2d Cir. 2017) (quoting *Heller v, Doe*, 509 U.S. at 320). I will turn now to consider the possible rational grounds that support the distinction at issue.

### *Budget savings*

Defendants argue that the State saves money by not making the New Policy retroactive to those employees who received their permanent promotions before March 13, 2017. Although this

argument appears persuasive at first glance, it overlooks the more refined inquiry that rational basis review requires: "rational basis review 'imposes a requirement of some rationality *in the nature of the class singled out*.'" *Winston*, 887 F.3d at 560 (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 308-09 (1966) (emphasis added)). Therefore, as the Supreme Court has noted in rejecting a similarly overbroad argument, "a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources." *Plyler v. Doe*, 457 U.S. 202, 227 (1982).

So, for example, if the desire to improve the public fisc were sufficient alone to justify any discriminatory policy, then plainly arbitrary policies of discrimination—like terminating unemployment benefits for anyone whose last name starts with the letter "P" or doubling the number of traffic tickets issued to cars with license plates ending in a prime number—would pass rational basis review with flying colors. But such arbitrary classifications should not pass rational review, because achieving the goal of enhancing the public fisc does nothing to explain why it makes sense to do so by imposing the burden in a wholly arbitrary fashion. Rational basis analysis focuses not on whether the law *en toto* achieves some rational benefit but whether a rational basis exists for the law to achieve its benefit by drawing the distinction that it does. Accordingly, I conclude that budget savings in the abstract is not a rational basis to support the classification at issue here between Old Policy and New Policy employees.

*Administrative burden*

Defendants next justify the New Policy's prospective applicability as a matter of administrative convenience. Doc. #25 at 7. As defendants see it, once the State decided to implement a policy to allow temporary workers to retain their stepped-up salary basis, the State reasonably could have decided it to be more efficient and less burdensome for its payroll

8

personnel "simply to continue with the wages presently received by the newly promoted employees as in the [New Policy], rather than take the time to recalculate each [Old Policy] employee's new promotional salary based on the prior position's compensation schedule." *Ibid.*

This argument is persuasive. It would be rational for the State to conclude that a new salary policy should apply prospectively only, because the State prefers to focus on making proper salary payments for employees going forward and not to try to calculate back payments or backward-looking salary step-up levels for employees subject to the Old Policy. "This kind of line is consistent with the distinction that the law often makes between actions previously taken and those yet to come." *Armour v. City of Indianapolis*, 566 U.S. 673, 684 (2012) (rejecting taxpayer challenge seeking retroactive benefit of tax policy that city had applied prospectively only).

Plaintiffs argue that there would be no significant administrative burden to calculate retroactive pay increases for just them, rather than all other statewide employees subject to the Old Policy. But the rational basis inquiry must focus on the distinction drawn by the New Policy as a whole, not just its burden or benefits for particular parties. It is apparent from the copy of the New Policy letter that is attached to the complaint that it applies broadly to almost all State employees who participate in the TSHC program. Doc. #1 at 14. In short, I conclude that administrative burden is a rational basis that is sufficient to support the classification at issue here between Old Policy and New Policy employees.

### *Labor force benefits*

Defendants further argue that the New Policy "avoids possible demoralization and employee unrest resulting from a lower promotional pay scale based on [promoted employees'] prior permanent position." Doc. #25 at 7. It is true that this "labor morale and peace" justification

9

surely supports the State's choice to pay higher salaries to New Policy employees, but it does nothing to explain why the State should leave Old Policy employees out in the cold. Indeed, to the extent that the New Policy leaves Old Policy employees like plaintiffs bereft of the new salary benefits while keenly aware of the benefits to be paid to their New Policy colleagues, the interests of labor morale and labor peace are surely undermined rather than advanced by the New Policy. So, once again, the State has advanced a rational basis in the abstract but one that lacks a necessary nexus to justify the distinction that the law itself draws.

Still, it is possible to conceive of a rational basis for the distinction that is tied to the State's related goal of labor recruitment and retention. *See Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91 (2d Cir. 2015) (recognizing recruitment and retention of workers as rational basis in Equal Protection context). Because the Old Policy employees have already accepted their permanent promotions, it would be rational for the State to conclude it has no need to dangle additional salary incentives to permanently fill or retain current employees in these supervisory positions.

Looking forward, the State could see things quite differently. It could rationally believe that more of its now-temporary supervisors in the TSHC program will accept permanent supervisor positions in the future if induced by the prospect of retaining the salary step-ups that have accrued to them since they started serving as temporary supervisors. Similarly, if the State is concerned about persuading enough non-supervisory employees to initially apply for and accept temporary supervisory positions under the TSHC program, the New Policy sweetens the proverbial pot by assuring these recruits that if their temporary positions ripen into permanent appointments, they will retain their interim salary benefits when that happens. Therefore, the

State has a rational basis grounded in sound labor recruiting and retention goals to implement a prospective-only salary benefit policy as it has done here.

A similar rationale has applied in other contexts to justify treating newcomer employees better than old-timer colleagues. *See Greer v. Univ. of S.C.*, 2012 WL 405773, at *8 (D.S.C. 2012) (describing how need to hire market-competitive university faculty creates circumstances where "[t]he salary of a new faculty member thus may be higher or close to that of a faculty member who has been at the University for many years"). In short, although I do not agree with the State's argument that concerns for labor morale and peace is a rational basis for the classification, I conclude that related goals of labor recruitment and retention are a valid rational basis for the State's salary distinction between Old Policy and New Policy employees.

## CONCLUSION

For the reasons set forth in this ruling, the Court GRANTS defendants' motion to dismiss the complaint (Doc. #24). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 11th day of March 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge